IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTONIO GUTIERREZ,

Petitioner,

v.

OREGON BOARD OF PAROLE
AND POST-PRISON SUPERVISION,

Respondent.

Civil No. 2:13-cv-01863-AC

FINDINGS AND RECOMMENDATION

ANTHONY D. BORNSTEIN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#29) should be DENIED.

## BACKGROUND

On December 23, 1984, Petitioner killed his mother and injured his father. On September 11, 1985, Petitioner was convicted on a plea of guilty to charges of Murder and Assault in the Second Degree. The trial judge sentenced Petitioner to an indeterminate term of life imprisonment for murder, and a consecutive ten-year term of imprisonment for the assault conviction. On May 11, 1999, Petitioner was convicted for Attempted Assault in the Second Degree, for which the trial judge sentenced him to 48 months of imprisonment to run consecutively to his original sentences.

Following the 1985 conviction, the Oregon Board of Parole and Post-Prison Supervision (the "Board") set Petitioner's projected parole release date in December of 1999. However, the Board deferred Petitioner's parole in 1998, 2000, 2002, and 2004. In 2006, Petitioner refused to participate in a psychological examination, so the Board declined to set a new parole release date and advised Petitioner that if he wished to change his mind about participating in a psychological evaluation, he could petition the Board to do so. In 2008, Petitioner informed the Board that he wished to participate in a psychological evaluation.

The Board appointed a psychologist to conduct a psychological evaluation of Petitioner. Dr. Frank Colistro evaluated Petitioner and, on January 26, 2009, submitted his report to the Board. Dr. Colistro diagnosed a personality disorder with antisocial impairment features largely in

remission.  Dr. Colistro found that Petitioner "was amenable to community-based treatment and supervision, and unlikely to recidivate as long as he adheres strictly to his supervision conditions."

The Board ordered a second psychological evaluation, which was conducted by Dr. Gary McGuffin.  On February 13, 2009, Dr. McGuffin evaluated Petitioner and diagnosed him with a mixed personality disorder with antisocial, paranoid, and narcissistic personality features.  Dr. McGuffin found that Petitioner's violent history, limited insight, and impulsivity that once placed him at high risk appeared to be less of a threat, but that there were still issues needing consideration regarding Petitioner's threat to re-offend if returned to the community.

On May 6, 2009, Petitioner appeared before the Board for an Exit Interview.  Petitioner testified at the Exit Interview, and the Board also considered both of the psychological evaluations, as well as the circumstances surrounding the crime, Petitioner's conduct and performance in the prison setting, and other matters.  At the conclusion of the Exit Interview, the Board announced its unanimous decision to defer Petitioner's parole for two years based upon a finding that Petitioner suffered from a present severe emotional disturbance that constituted a danger to the health or safety of the community.

Petitioner sought administrative review of the Board's decision.  He raised several challenges, including due process and Fifth Amendment self-incrimination claims.  On September 14, 2010, the Board denied administrative relief.  Petitioner then sought judicial review of the Board's ruling, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Gutierrez v. Board of Parole and Post-Prison Supervision*, 256 Or. App. 520, 301 P.3d 987, *rev. denied*, 354 Or. 148, 311 P.3d 525 (2013).

On October 13, 2013, Petitioner filed his habeas corpus action in this Court. In an Amended

Petition for Writ of Habeas Corpus Relief, Petitioner alleges two grounds for relief:

> **Ground One:** The Oregon Board of parole violated petitioner's right to Due
> Process of Law under the Fourteenth Amendment when, in 2009, it denied his
> release in an action undertaken in an arbitrary manner, without adequate support in
> the record, and in violation of the standard required to deny release to an Oregon
> prisoner.

> **Ground Two:** The Oregon Board of Parole violated petitioner's right against
> compelled self incrimination, in violation of the Fifth Amendment, when it required
> that he undergo and participate in a psychological evaluation as part of his parole
> hearing, which is known as an Exit Interview.

Respondent argues Petitioner's claims do not warrant habeas corpus relief because they were both

correctly denied on the merits in a state-court decision that is entitled to deference.

## LEGAL STANDARDS

Under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an

application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state

court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of,

clearly-established federal law, as determined by the Supreme Court of the United States" or (2)

was "based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under the AEDPA if it either fails to apply

the correct Supreme Court authority or applies the correct controlling authority to a case involving

"materially indistinguishable" facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362,

405–07, 413 (2000). Similarly, a state court decision is an unreasonable application of federal law

"if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).

An unreasonable application of federal law is a different than an incorrect application of federal law. *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012). "'[T]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Id.* at 1146 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, the state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I.    Due Process

Petitioner alleges the Board violated his due process rights when the Board decided to defer Petitioner's parole release date for an additional 24 months. Petitioner argues the Board's decision was arbitrary because the psychological evaluations upon which the Board relied were inconsistent with his behavior and history.

Where state law creates a liberty interest in parole, the Supreme Court has held that "the Due Process Clause requires fair procedures for its vindication–and federal courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 131 S.Ct. 859, 862 (2011). The procedures required to satisfy due process requirements in the parole context, however, are minimal, and include only an opportunity to be heard and provision of a statement of the reasons why the parole was denied. *Id.* (citing *Greenholtz v. Inmates of Neb.*

5 - FINDINGS AND RECOMMENDATION -

*Penal and Correctional Complex*, 442 U.S. 1, 16 (1979)). Further, "[b]ecause the only *federal* right at issue is procedural, the relevant inquiry is what process [the petitioner] received, not whether the state court decided the case correctly." *Id.* at 836 (emphasis supplied).

Here, assuming without deciding that Oregon law creates a liberty interest in parole[1], Petitioner received at least the minimal amount of required process: the Board provided Petitioner with a copy of the examining psychologists' written reports prior to the parole hearing, Petitioner was allowed to present evidence and argument before and at the hearing, and the Board notified Petitioner in writing of the reasons why his parole release date was deferred.

Petitioner's argument that the facts before the Board did not support the Board's ultimate decision to defer Petitioner's parole release date is a substantive challenge to the Board's decision foreclosed by *Swarthout*. In the parole context, sufficiency of the evidence is not a protected due process right. *Watts v. Oregon Bd. of Parole and Post-Prison Supervision*, Case No. 6:13-cv-02010-HZ, 2014 WL 2894649, *2 n.1 (D. Or., June 23, 2014). Instead, whether an inmate is given an opportunity to be heard and provided a statement of the reasons as to why his parole was denied is "the beginning and the end of the federal habeas courts' inquiry. . . ." *Swarthout*, 131 S.Ct. at 862. Accordingly, Petitioner is not entitled to habeas corpus relief on the due process claim alleged in Ground One of the Amended Petition.

---

[1]Because Petitioner received the process due under *Swarthout*, the court need not decide whether Oregon law creates a protected liberty interest in parole release. *See Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1398 (9th Cir. 1987) (conclusion that inmate received process due under prior Supreme Court decision on parole release relieved Court of necessity of addressing existence of liberty interest).

6 - FINDINGS AND RECOMMENDATION -

## II.   Self-Incrimination

Petitioner also contends the Board violated his Fifth Amendment right to be free from self-incrimination by requiring that he participate in a psychological evaluation as part of the Exit Interview process.  Petitioner twice previously asserted the same self-incrimination claim against prior Board decisions, and this Court twice rejected his argument.  *See Gutierrez v. Belleque*, Case No. 3:08-cv-00311-ST, 2011 WL 4832568 (D. Or., July 21, 2011), *report and recommendation adopted*, 2011 WL 4832571 (D. Or.,  Oct. 12, 2011) (2004 parole deferral decision); *Gutierrez v. Belleque*, Case No. 3:08-cv-00464-JE, 2011 WL 3298398 (D. Or., June 15, 2011), *report and recommendation adopted*, 2011 WL 3290363 (D. Or., July 29, 2011) (2006 parole deferral decision); *see also Houff v. Blackletter*, Case No. 1:06-cv-01328-CL, 2009 WL 2486375 (D. Or., Aug. 13, 2009) (Fifth Amendment protections did not apply to psychological evaluation performed for parole determination where information was sought regarding past crimes for which petitioner had already been convicted), *aff'd*, 433 Fed.Appx. 590 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1120 (2012); *Lee v. Maass*, Case No. 3:91-cv-00580-FR; 1991 WL 259419 (D. Or., Nov. 27, 1991) (same).

Once again, the psychological evaluations considered by the Board as part of the May 6, 2009, Exit Interview process were not intended to be used as a tool to convict Petitioner of new criminal conduct or impose additional sentences.  Moreover, there is no clearly established federal law establishing a Fifth Amendment violation where a parole board requires the completion of a psychological evaluation before affording parole consideration.  Accordingly, the state court

decision denying relief on Petitioner's self-incrimination claim alleged in Ground Two is entitled to deference.

## RECOMMENDATION

For these reasons, the Amended Petition for Writ of Habeas Corpus (#29) should be DENIED and a judgment of DISMISSAL should be entered.

A certificate of appealability should be DENIED, as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 29, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this _____ day of May, 2015.

John V. Acosta
United States Magistrate Judge

8 - FINDINGS AND RECOMMENDATION -